IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CR3040 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE LOPEZ LOYA, NOE GUSTAVO | ) | MEMORANDUM AND ORDER ON THE |
| CHAVEZ LOYA, | ) | DEFENDANTS' OBJECTIONS TO THE |
| | ) | MAGISTRATE JUDGE'S REPORT AND |
| Defendants. | ) | RECOMMENDATION |
| | ) | |

Defendant Jose Lopez Loya moved to suppress evidence that was obtained by a law enforcement officer during a vehicle search. (See filing 17.) Co-defendant Noe Gustavo Chavez Loya joined in Lopez Loya's motion. (See filing 19.) A hearing on the motion was held before United States Magistrate Judge David L. Piester on June 5, 2006, (see filing 30), and, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the magistrate judge has recommended that I deny the defendants' motion to suppress, (see filing 35). Now before me are the defendants' objections to the magistrate judge's report and recommendation. (See filings 37, 41.) In the course of my de novo review of those portions of the magistrate judge's report that the defendant challenges, see United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003); 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3), I have studied the magistrate judge's report and recommendation (see filing 35); the transcript of the June 5 hearing (see filing 36); the exhibits received into evidence at the hearing (see filing 31); and the briefs submitted by the defendants in support of their motion to suppress and their objections to the report and recommendation (see filings 18, 34, 38, 42). I have also studied the government's brief in opposition to the defendants' objections to the report and recommendation. (See filing 44.) One of the defendants' objections will be sustained; however, I shall adopt the balance of the magistrate judge's

1

report and deny the motion to suppress.

## I.  BACKGROUND

The relevant facts are summarized in the magistrate judge's thorough report and need not be repeated here in full.  Indeed, the defendants have not objected to the magistrate judge's findings of fact.  (See filing 42 at 1 ("Defendant Lopez-Loya adopts all factual findings by the Magistrate [Judge]."); filing 38 at 1 ("Essentially, the facts as found by the Magistrate [Judge] are deemed to be correct . . . .").)  Briefly, on February 14, 2006, at approximately 10:15 a.m., the defendants were traveling east on Interstate 80 in a red vehicle.  The defendants exited the interstate at the Giltner interchange after passing signs stating "State Patrol Checkpoint Ahead," "State Patrol Vehicle Check Ahead," "Drug Dog Ahead," and "Drug Dog in Use Ahead," which had been placed along the interstate west of the Giltner exit by the Nebraska State Patrol.  Nebraska State Patrol Trooper Andy Allen, who was stationed in a patrol vehicle near the Giltner exit, spotted the defendants' vehicle and another car traveling along the exit ramp.  The trooper observed that the second vehicle was closely following the defendants' vehicle and that the defendants' vehicle failed to stop completely at the stop sign at the end of the exit ramp.  He decided to stop both vehicles–the defendants' for running the stop sign, and the other for following the defendants' vehicle too closely.  However, only the defendants stopped in response to the trooper's signals.

Trooper Allen exited his patrol car and approached the defendants' vehicle on the passenger's side.  The trooper asked Chavez Loya, who was the driver of the vehicle, for his licence and the vehicle's registration.  Chavez Loya indicated that he had no license, and Lopez Loya provided the registration.  The trooper asked for the name of the owner of the vehicle, and Lopez Loya responded with the name "Juan."  However, the car was in fact registered to a Geraldo Perez.  Trooper Allen asked Chavez Loya to accompany him to the patrol car to receive a citation, and Chavez Loya complied.

In the patrol car, Chavez Loya informed Trooper Allen that he possessed a Mexican driver's license, but he did not have that license with him.  He also stated that the defendants were traveling to the state capital of Nebraska.  The trooper left Chavez Loya seated in the front passenger seat of the patrol car and returned to the defendants' vehicle to speak to Lopez Loya.  Lopez Loya stated, among other things, that the defendants were traveling together with the vehicle that had been following them closely.  He also denied that there were drugs or guns in the vehicle and gave the trooper permission to conduct a search.

Trooper Allen then returned to the patrol car and finished writing the warning and citation to Chavez Loya.  However, instead of presenting the warning and citation to Chavez Loya, the trooper asked a series of one-word questions: "Pistolas?"  "Drugas?" "Marijuana?" "Cocaine?"  Chavez Loya responded to each question in the negative. Trooper Allen repeated his questions, and again Chavez Loya responded negatively.  At this point the trooper asked Chavez Loya for permission to search the vehicle, using the word "escucar," (see Report and Recommendation, filing 35, at 6 & n.1), or "escuchar," (see Tr., filing 36, at 28:25, 57:22-58:14).  Chavez Loya responded, "no," to this question in a confused voice, but he also nodded affirmatively and gestured toward the defendants' vehicle and toward Lopez Loya.  Trooper Allen interpreted Chavez Loya's responses as indicating that Chavez Loya consented to the search of the vehicle, that the trooper should ask Lopez Loya for permission to search the vehicle, and that Chavez Loya was "scared to death" and wanted the trooper to leave him alone.  Since the trooper had already obtained Lopez Loya's consent to search the vehicle, he returned to the vehicle and commenced a search.  In the trunk of the defendants' vehicle, the trooper found a speaker box that contained pseudoephedrine.  (See Tr., filing 36, at 31:9-11, 38:20-21.)

Lopez Loya moved to suppress the evidence obtained from the vehicle, (see filing 17), and the Chavez Loya joined in the motion, (see filing 19).  In support of their motion to suppress, the defendants argued that the State Patrol's "ruse checkpoint" was illegal;

that the defendants' decision to exit at Giltner could not be used to justify the traffic stop; that the defendants' failure to stop at the stop sign could not justify the trooper's decision to stop the vehicle because, under the circumstances, the failure to stop at the stop sign did not amount to a traffic violation; and that Lopez Loya's consent to the search was tainted by the illegal stop.[1]  (See filings 18, 34.)  The magistrate judge considered the defendants' motion and recommended that it be denied.  (See generally Report, Recommendation and Order, filing 35.)  The defendants have filed objections to the magistrate judge's report and recommendation, (see filings 37, 38, 41, 42), and my analysis of these objections is set forth below.

## II. ANALYSIS

The defendants object to the magistrate judge's findings that the initial traffic stop was lawful and that Chavez Loya consented to the search of the vehicle.  (See generally filings 38, 42.)  I shall consider each objection in turn.

### A. Whether the Initial Traffic Stop Was Lawful

Noting that "[t]he evidence is uncontroverted that defendant Chavez [Loya] did not stop at the stop sign at the end of the exit ramp," and that "[r]unning a stop sign is a traffic violation," the magistrate judge concluded that Trooper Allen's decision to stop the defendants' vehicle was supported by probable cause and was therefore lawful.  (See Report, Recommendation, and Order, filing 35, at 7-8 (citing United States v. Cortez-Palomino, 438 F.3d 910, 912-13 (8th Cir. 2006)); see also Neb. Rev. Stat § 60-6,148(2) ("Except when directed to proceed by a peace officer or traffic control signal, every driver of a vehicle approaching an intersection where a stop is indicated by a stop sign shall stop . . . ."); Neb. Rev. Stat. § 60-667(1) ("Stop, when required, shall mean a

---

[1]Lopez Loya also argued initially that his Miranda rights had been violated, (see filing 18 at 5-6), but he withdrew this argument during the hearing on the motion to suppress, (see Tr., filing 36, at 75:22-24).

4

complete cessation of movement."). Lopez Loya objects to this finding, arguing that even though the defendants' vehicle did not stop at the stop sign at the end of the Giltner exit ramp, there was no traffic violation. Lopez Loya's argument is based primarily upon Nebraska Revised Statute § 28-1407, "Justification; choice of evils," which states,

> (1) Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:
>
> (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
>
> (b) Neither sections 28-1406 to 28-1416 nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
>
> (c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.
>
> (2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

Lopez Loya argues that in view of Trooper Allen's testimony that he thought the second car was "going to hit" the defendants' car because it was following so closely, (see Tr., filing 36 at 40:11), and that the Giltner interchange was infrequently used by motorists, (see id. at 11:12-23), the evidence supports the "logical factual conclusion" that the defendants' car "rolled through the stop sign to avoid a collision from a vehicle traveling too closely behind it," (filing 42 at 2). Furthermore, he claims that since the harm sought to be avoided by the defendants, i.e., suffering a collision from the rear, is greater than the harm associated with pulling into a "dead" intersection, the defendants' failure to stop at the stop sign was justified under section 28-1407, and it was therefore unreasonable for Trooper Allen to stop them.

I find Lopez Loya's argument to be creative and interesting, but I am not persuaded that the traffic stop was unlawful. Even if I assume that section 28-1407 can, if its terms are met, render unlawful a traffic stop that was based upon a "justifiable" moving violation,[2] the defendants have not established that the elements of the "choice of evils" defense have been satisfied in this case. The Nebraska Supreme Court has stated,

> [T]he justification or choice of evils defense requires that the defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediately imminent harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur.

State v. Cozzens, 490 N.W.2d 184, 189 (Neb. 1992) (citations omitted). The evidence adduced at the motion hearing does not establish that the defendants ran the stop sign in order to avoid a rear-end collision. More specifically, there is no evidence that the defendants believed that a rear-end collision was "immediately imminent" or "certain" to occur; that the defendants believed that running the stop sign was necessary to avoid an imminent collision; and that the defendants believed that running the stop sign was the least harmful alternative available to them. Indeed, there is no evidence that the defendants were aware of any risk of a collision from the rear when they ran the stop sign. In short, the defendants have not "factually establish[ed] that their actions . . . were efforts to prevent a specific and immediate harm," because there is no evidence that they had "personal knowledge" that such a harm was imminent. Cozzens, 490 N.W.2d at 189. Since the defendants have not shown that their failure to stop at the Giltner stop sign was justifiable under section 28-1407, Lopez Loya's argument that the traffic stop was

---

[2] I note parenthetically that Nebraska Revised Statute § 28-1416(1) provides, "In any prosecution based on conduct which is justifiable under sections 28-1406 to 28-1416, justification is an affirmative defense." (Emphasis added). It is not clear, however, that a traffic stop based upon conduct which is justifiable under section 28-1407 is necessarily unlawful. This question need not be resolved here because, for the reasons stated below, I find that the defendants have not satisfied the elements of the defense.

6

unlawful necessarily fails.

### B.     Whether Chavez Loya Consented to the Search of the Vehicle

Although "there was a considerable language barrier" between Trooper Allen and Chavez Loya, the magistrate judge concluded that, in view of the totality of the circumstances, Trooper Allen reasonably believed that Chavez Loya consented to the search of the vehicle. (See Report, Recommendation, and Order, filing 35, at 12-13.) The defendants object to this conclusion, arguing, among other things, that Trooper Allen used a meaningless word to request permission to search and, in any case, Chavez Loya responded negatively to the trooper's query. (See filing 42 at 7; filing 38 at 1.)

"[A] warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004) (quoting United States v. Brown, 763 F.2d 984, 987 (8th Cir. 1985)). "The government has the burden of proving by a preponderance of the evidence that a subject's alleged consent to a search was legally sufficient to warrant admitting the fruits of the search into evidence." Id. (citing United States v. Matlock, 415 U.S. 164, 177 (1974)). In order to meet this burden, "the government must show that a reasonable person would have believed that the subject of a search gave consent that was 'the product of an essentially free and unconstrained choice,' and that the subject comprehended the choice that he or she was making." Id. (citations omitted) (emphasis added). I must therefore "determine whether it was reasonable to believe that [Chavez Loya] understood what [Trooper Allen] was asking and gave him permission to search the [vehicle] and, if so, whether it was reasonable to believe that the consent was voluntary." Id. at 685.

In his Report and Recommendation, the magistrate judge carefully reviewed the relevant circumstances and, as I indicated above, concluded that Trooper Allen reasonably believed that Chavez Loya consented to the search. (See Report, Recommendation, and Order, filing 35, at 13.) He noted that in his view, the balance was

tipped by two considerations:

> First, had Chavez [Loya] not understood what Allen was asking, he would not have nodded affirmatively after the question was asked; he would have shaken his head or held up and/or shaken his hands or in some other way indicated that he did not understand.  Second, it is telling that Chavez [Loya] made no protest once he could see Allen commencing the search; if he had not consented, he would have somehow expressed surprise (at least) once he knew Allen was searching the car.

(Id.)  These two considerations do weigh in favor of a finding that the trooper reasonably believed that Chavez Loya consented to the search.  However, I am troubled by the fact that the question put to Chavez Loya by Trooper Allen, i.e., "Would you give me escuchar [(or escucar)]?" (see Tr., filing 36, at 28:18-29:1; Report, Recommendation, and Order, filing 35, at 6 & n.1, 12-13), does not state a request for permission to search the vehicle.  On the contrary, the Trooper's question was nonsensical at best, and it might have conveyed the impression that Chavez Loya was required to heed the trooper's instructions.

As the magistrate judge noted, "escucar" does not appear to be a word in the Spanish language, (see Report, Recommendation, and Order, filing 35, at 6 n.1); nor is it a word in the English language.  Therefore, even if I were to assume that Chavez Loya could understand the English portion of the trooper's question, it seems to me that the query, "Would you give me escucar?" carries no meaning.  The question is simply nonsense.  I find that if the trooper used the word "escucar" when requesting permission to search the car, as the magistrate judge found, it is not reasonable to believe that Chavez Loya understood what Trooper Allen was asking him.

The word "escuchar," which appears in the transcript of Trooper Allen's testimony, is the infinitive form of a Spanish verb that means "to listen" or "to heed" in English.  See The University of Chicago Spanish-English English-Spanish Dictionary 118 (3d ed. 1981).  If I assume that Chavez Loya understood the English portion of the trooper's question, and if I assume that the trooper used the word "escuchar" to request

8

permission to search (as opposed to "escucar"), Chavez Loya would have heard the trooper ask, literally, "Would you give me to listen?" or "Would you give me to heed?" while gesturing toward the defendants' car. The question does not make sense, and even when it is coupled with the trooper's gestures toward the car, it is not reasonable to believe that Chavez Loya understood that Trooper Allen was asking for permission to search the car or that Chavez Loya's response gave Trooper Allen permission to search the car.

I am mindful that a poorly-worded request for permission to search does not necessarily invalidate consent. In United States v. Gallardo, No. 4:05CR3085, slip op. at 22 (D. Neb. Feb. 6, 2006), available at 2006 WL 296413, a state trooper asked a Spanish-speaking motorist a series of questions concerning the trafficking of drugs and guns, and the motorist responded to each question in the negative. The trooper then asked, "Yo yo policia yo policia buscar el carro?" The motorist responded immediately, in English, "OK, go ahead." See id. at 23. In a report, recommendation, and order concerning a motion to suppress evidence discovered by the trooper, the magistrate judge undertook a careful analysis of the meaning of the word "buscar" and the correct Spanish terms for "search," and he observed that the trooper's question, which was translated as, "I I police I police look the car?" was ungrammatical. See id. at 22-26. The magistrate judge noted that "[t]he issue of whether the defendant truly understood [the trooper's] request for consent, or whether [the trooper] was reasonable in believing he did, presents a close question," id. at 26; however, he ultimately concluded that the surrounding circumstances established that a reasonable officer would have believed that the defendant knowingly consented to the search:

> Before asking for consent, [the trooper] asked if there was "cocaine in the car," "marijuana inside the car," "methamphetamine inside the car," and "pistols in the car." Receiving a "No" response to each of these questions, [the trooper] asked, in a questioning but undemanding tone, "I I police I police look the car?" The defendant immediately responded, "Okay, go

9

ahead" in English, and in response to follow up questions, stated "no problem at all" and "no problem" in Spanish, and confirmed he understood what the officer was asking. Under the totality of these circumstances, I conclude a reasonable officer would believe the defendant understood the officer was interested in determining what was "in" and "inside" the vehicle, and wanted to "look;" and the defendant's statement that he understood and to "go ahead," "no problem at all" was a knowing consent to search the vehicle.

Id.[3]

This case is distinguishable from Gallardo in several key respects. First, Trooper Allen's preliminary questions about drugs and guns were simple one-word queries: "Pistolas?" "Drugas?" "Marijuana?" "Cocaine?" (See Report, Recommendation, and Order, filing 35, at 5-6.) They did not convey that the trooper was interested in determining what was inside the vehicle, as the questions in Gallardo did. Second, as I indicated above, Trooper Allen did not ask Chavez Loya for permission to search the car in either English or Spanish. Instead, he asked a question that was not merely ungrammatical, but was nonsensical and in no way conveyed an interest in searching or looking inside the defendants' vehicle. Third, Chavez Loya did not respond to the trooper's question by stating, "Okay, go ahead," but instead responded ambiguously and with confusion. Fourth, although it is not clear whether the trooper asked follow up questions of Chavez Loya, there is no evidence that the trooper used a term other than "escucar" or "escuchar" when asking for permission to search the car, and there is no evidence that Chavez Loya stated that he understood what the trooper was asking. In sum, while an ungrammatical request to search a vehicle does not invalidate consent when the surrounding circumstances establish that it is reasonable to believe that the defendant understood what the trooper was asking and gave the trooper permission to search the vehicle, in the present case the request to search was completely nonsensical

---

[3]I adopted the magistrate judge's report and recommendation in Gallardo. See United States v. Gallardo, No. 4:05CR3085 (D. Neb. March 13, 2006), available at 2006 WL 680890.

and the surrounding circumstances do not establish that the defendant understood the request or gave permission to search the vehicle.

Since the government has not shown that Chavez Loya knowingly and voluntarily consented to the search of his vehicle, I must sustain the objection to the magistrate judge's finding that Chavez Loya consented to the search.

### C. Whether the Search was Lawful in View of Lopez Loya's Consent

The effect of Lopez Loya's knowing and voluntary consent[4] to the search of the vehicle remains to be determined. More specifically, if Lopez Loya's consent, standing alone, was sufficient to authorize the search, then the trooper's failure to obtain consent from Chavez Loya is irrelevant.

Although this issue was not addressed by the magistrate judge in his report and recommendation,[5] it has been briefed by Lopez Loya and the government. (See filing 42 at 8; filing 44 at 8-11.) Lopez Loya claims that the motion to suppress ought to be granted, despite his consent to the search, in accordance with the rule recently announced in Georgia v. Randolph, 126 S. Ct. 1515 (2006). (See filing 42 at 8.) In response, the government argues that Lopez Loya had authority to consent to a search of the vehicle and, under the circumstances, Trooper Allen reasonably believed that Lopez Loya had authority over the vehicle. (See filing 44 at 9-11.) I find that the government is correct.

"It is . . . well settled that consent to a search may be given not only by the owner

---

[4]The magistrate judge found that Lopez Loya voluntarily consented to the search, (see Report, Recommendation and Order, filing 35, at 12, 13), and the record establishes that there was no communication barrier between Lopez Loya and Trooper Allen. The parties have not objected to the magistrate judge's finding, and I shall adopt it.

[5]I note that it was unnecessary for the magistrate judge to address this question in view of his conclusion that Chavez Loya knowingly and voluntarily consented to the search.

of the property to be searched but also by a 'third party who possesse[s] common authority over or other sufficient relationship to the premises . . . sought to be inspected.'" United States v. Eldridge, 984 F.2d 943, 948 (8th Cir. 1993) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). Thus, even if the actual owner of a car is not present, a driver has authority to consent to a search of the vehicle he is driving, "including [the] trunk, glove box and other components." Id. (quoting United States v. Morales, 861 F.2d 396, 399 (3d Cir. 1988)). "This is true even when some other person who also has control over the car is present, if the other person remains silent when the driver consents and does not object to the search." Id. (citations omitted). Passengers may also have authority to consent to searches of the vehicles they are riding in. See United States v. Poulack, 236 F.3d 932, 934-35, 936 (8th Cir. 2001) (holding that passenger, who rented the truck, voluntarily consented to its search); United States v. Hammons, 152 F.3d 1025, 1027 (8th Cir. 1998) ("Both parties agree that because the car was rented in [the passenger's] name, she had authority to consent to its search."); United States v. Morales, 861 F.3d 396, 400 n.9 (3d Cir. 1988) ("We note that a passenger may also have the authority to consent to a full search of a vehicle, including the trunk."). A person's authority to consent to a search of property in which another person has an interest depends upon whether there is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Matlock, 415 U.S. 164, 171 n.7 (1974). "The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises." United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997).

     Although Chavez Loya was driving the car, Lopez Loya demonstrated "particular knowledge about the car and its control and dominion by readily retrieving the

registration card from the glove compartment without reference to or help from [Chavez Loya]," by claiming to know the name of the owner of the car, and by claiming that he borrowed the vehicle. United States v. Ospina, 682 F. Supp. 1182, 1185 (D. Utah 1988). (See also Tr., filing 36, at 48:12-50:9.) Also, I note that Lopez Loya consented to the search without indicating that Chavez Loya should be consulted for permission. I find that in view of these facts, Lopez Loya had at least joint control over the vehicle with Chavez Loya, and a reasonable officer would be justified in the belief that Lopez Loya had authority to permit the search of the vehicle–including the speaker box located in the trunk–in his own right. I therefore find that the search of the vehicle was consensual, there was no Fourth Amendment violation, and the evidence obtained from the speaker box will not be suppressed.

     Lopez Loya argues that the evidence obtained from the vehicle should be suppressed in light of the Supreme Court's recent decision in Georgia v. Randolph, 126 S. Ct. 1515 (2006). In Randolph, the Court held that when one occupant of a dwelling consents to the search of the dwelling, but another occupant who is present at the scene expressly refuses to consent and then moves to suppress the evidence obtained during the search, the warrantless search is "unreasonable and invalid" as to the non-consenting occupant. 123 S. Ct. at 1518-19. See also id. at 1526 ("We . . . hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident."). Since there is no evidence that Chavez Loya expressly refused to consent to the search of the vehicle, I fail to see how Randolph avails either defendant.

     In sum, I find that the initial stop of the defendants' vehicle was lawful, and although Chavez Loya did not knowingly consent to the search of the vehicle, Lopez Loya, who did knowingly and voluntarily consent to the search, had authority over the vehicle and could permit the search in his own right. Also, under the circumstances

presented in this case, a reasonable officer would have been justified in the belief that Lopez Loya had such authority. I must therefore deny the defendants' motion to suppress.

    **IT IS ORDERED** that:

1. The defendants' objections to the magistrate judge's report and recommendation, filings 37 and 41, are sustained in part and overruled in part, as explained in the memorandum accompanying this order;

2. The magistrate judge's report and recommendation, filing 35, is adopted, with the exception of the finding that Chavez Loya consented to the search of the vehicle; and

3. Lopez Loya's motion to suppress, filings 17, in which Chavez Loya joined, filing 19, is denied.

Dated July 26, 2006.

                        BY THE COURT

                        s/ Warren K. Urbom
                        United States Senior District Judge